Trenton R. Kashima (SBN No. 291405)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
402 West Broadway St., Suite 1760
San Diego, CA 92101
Tel: (619) 810-7047
tkashima@milberg.com

*Attorneys for Plaintiffs and the Class*

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAKEMA TATE and RICHARD ORTIZ individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WM. BOLTHOUSE FARMS, INC.,<br><br>Defendant. | Case No.: 1:23-cv-01038-JLT-CDB<br><br>Hon. Jennifer L. Thurston<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT** |

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUHTORITIES .........................................**Error! Bookmark not defined.**

INTRODUCTION ....................................................................................................... 1

FACTUAL BACKGROUND........................................................................................ 3

ARGUMENT .............................................................................................................. 4

   I.   Plaintiffs Have Article III Standing to Pursue Their Claims ............................... 4

     A.   Plaintiffs Have Plausibly Alleged That They Purchased Products Containing PFAS ..... 4

     B.   Plaintiffs Have Properly Pled An Economic Injury ........................................ 6

     C.   Plaintiffs Have Standing to Assert Express Warranty Claims on Behalf of Nationwide Class ................................................................................................................. 8

   II.   Plaintiffs' Claims Are Not Preempted ............................................................... 9

   III.   Plaintiffs Have Properly Pled Consumer Protection Claims.......................... 10

     A.   Plaintiffs Have Alleged Actionable Misrepresentations ............................... 11

     B.   Defendants' Statements Are Not Mere Puffery ........................................... 12

     C.   Plaintiffs Have Pled Actionable Omissions ................................................ 13

     D.   Plaintiffs Satisfy Rule 9(b) Pleading Standards ......................................... 17

   IV.  Plaintiffs' Warranty Claims are Adequately Pled.......................................... 18

     A.   Plaintiffs' Express Warranty Claims are Sufficiently Pled............................ 18

     B.   Plaintiffs Implied Warranty Claims Are Sufficiently Pled ........................... 19

     C.   The Court Should Not Stay this Action Under the Doctrine of Primary Jurisdiction.... 20

CONCLUSION.......................................................................................................... 23

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS         Case No.: 1:23-cv-01038

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Anderson v. Apple Inc.*,
500 F. Supp. 3d 993 (N.D. Cal. Nov. 16, 2020) ..............................................13, 15

5

6

*Apodaca v. Whirlpool Corp.*,
No. SACV 13-00725 JVS, 2013 WL 6477821 (C.D. Cal. Nov. 8, 2013) ........................15, 16

7

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) .............................................................20

8

9

*Augustine v. Talking Rain Bev. Co.*,
386 F. Supp. 3d 1317 (S.D. Cal. April 12, 2019) ....................................14

10

11

*Bietsch v. Sergeant's Pet Care Prods., Inc.*,
No. 15 C 5432, 2016 WL 1011512 (N.D. Ill. Mar. 15, 2016) ................................13

12

*In re Big Heart Pet Brands Litig.*,
No. 18-CV-00861-JSW, 2019 WL 8266869 (N.D. Cal. Oct. 4, 2019)....................16

13

14

*Bojko v. Pierre Fabre USA Inc.*,
No. 22 C 6728, 2023 WL 4204663 (N.D. Ill. June 27, 2023) ................................17

15

16

*Bonny Schippell v. Johnson and Johnson Consumer Inc.*,
No. EDCV23410JGBSHKX, 2023 WL 6178485 (C.D. Cal. Aug. 7, 2023)...........................8

17

*Bowen v. Energizer Holdings, Inc.*,
No. CV 21-4336-MWF, 2023 WL 1786731 (C.D. Cal. Jan. 5, 2023)....................................5

18

19

*Bradford Sch. Bus Transit v. Chi. Transit Auth.*,
537 F.2d 943 (7th Cir. 1976) ............................................................20

20

*Brazil v. Dole Food Co.*,
935 F. Supp. 2d 947 (N.D. Cal. 2013) ...............................................................1

21

22

*Brown v. Starbucks Corp.*,
No. 18CV2286 JM (WVG), 2019 WL 996399 (S.D. Cal. Mar. 1, 2019).............................12

23

24

*Burton v. Hodgson Mill, Inc.*,
No. 16-CV-1081-MJR-RJD, 2017 WL 1282882 (S.D. Ill. Apr. 6, 2017) ..............................22

25

*Cadena v. American Honda Motor Co., Inc.*,
No. CV 18-4007, 2018 WL 8130613 (C.D. Cal. Nov. 14, 2018)..............................................9

26

27

28

*Chavez v. Church & Dwight Co.*,
  No. 17 C 1948, 2018 WL 2238191 (N.D. Ill. May 16, 2018) ...................................22

*City of Chicago v. Purdue Pharma L.P.*,
  211 F. Supp. 3d 1058 (N.D. Ill. 2016) ...................................................................21

*Clinger v. Edgewell Pers. Care Brands, LLC*,
  No. 3:21-CV-1040 (JAM), 2023 WL 2477499 (D. Conn. Mar. 13, 2023)...........................5

*In re ConAgra Foods, Inc.*
  908 F. Supp. 2d 1090 (C.D. Cal. Nov. 15, 2012) ...........................................17, 18

*Czuchaj v. Conair Corp.*,
  No. 13–CV–1901, 2014 WL 1664235 (S.D. Cal. Apr. 18, 2014) .........................................15

*Davis v. Rebel Creamery LLC*,
  No. 22-cv-04111-TSH, 2023 WL 2620900 (N.D. Cal. Mar. 23, 2023) ...................................11

*Dawood v. Gamer Advantage LLC*,
  No. 2:22-cv-00562 WBS, 2022 WL 3108846 (E.D. Cal. Aug. 4, 2022)...................................7

*Elias v. Hewlett-Packard Co.*,
  903 F. Supp.2d 843 (N.D. Cal. 2012) ...............................................................11, 14

*Falk v. General Motors Corp.*,
  496 F. Supp. 2d 1088 (N.D. Cal. 2007) ...............................................................15, 16

*Gallagher v. Bayer AG*,
  No. 14-cv-04601-WHO, 2015 WL 4932292 (N.D. Cal. Aug. 18, 2015) ...............................5

*Gaminde v. Lang Pharma Nutrition, Inc.*,
  No. 118CV300GLS, 2019 WL 1338724 (N.D.N.Y. Mar. 25, 2019) .......................................5

*Grossman v. Schell & Kampeter, Inc.*,
  No. 2:18-CV-02344-JAM-AC, 2019 WL 1298997 (E.D. Cal. Mar. 21, 2019).................14, 16

*Gubala v. CVS Pharmacy, Inc.*,
  No. 14 C 9039, 2016 WL 1019794 (N.D. Ill. Mar. 15, 2016) .................................21

*Hadley v. Kellogg Sales Co.*,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017) .................................................................12

*Hamman et al. v. Cava Group, Inc.*,
  No. 22-cv-593-MMA, 2023 WL 3450654 (S.D. Cal. Feb. 8, 2023) .........................................7

*Herrington v. Johnson & Johnson Consumer Cos., Inc.*,
  C 09-1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010)...................................5

*Hinojos v. Kohl's Corp.*,
 718 F.3d 1098 (9th Cir. 2013) ........................................................................7

*Hodsdon v. Mars, Inc.*,
 891 F.3d 857 (9th Cir. 2018) ...................................................................13, 14

*Holley v. Gilead Scis., Inc.*,
 379 F. Supp. 3d 809 (N.D. Cal. 2019) ...........................................................18

*Holt v. Foodstate, Inc.*,
 No. 15CV78 L (JMA), 2015 WL 9592534 (S.D. Cal. Dec. 31, 2015) ...................10

*In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*,
 955 F. Supp. 2d 1311 (S.D. Fla. 2013) ...........................................................21

*Isip v. Mercedes-Benz USA, LLC*,
 155 Cal. App. 4th 19 (2007) ..........................................................................19

*Jones v. ConAgra Foods, Inc.*,
 912 F.Supp.2d 889 (N.D.Cal.2012) ...................................................................1

*In re Juul Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*,
 497 F. Supp. 3d 552 (N.D. Cal. 2020) ............................................................22

*Kanan v. Thinx Inc.*,
 No. CV 20-10341 JVS, 2021 WL 4464200 (C.D. Cal. June 23, 2021)...............5, 7

*Kasky v. Nike, Inc.*,
 27 Cal.4th 939 (2002) ...................................................................................12

*Khorrami v. Lexmark Int'l, Inc.*,
 No. CV 07–01671, 2007 WL 8031909 (C.D. Cal. Sept. 13, 2007)......................9

*Kutza v. Williams-Sonoma, Inc.*,
 No. 18-CV-03534-RS, 2018 WL 5886611 (N.D. Cal. Nov. 9, 2018) ...................11

*Landgraf v. USI Film Prods.*,
 511 U.S. 244 (1994)......................................................................................22

*LiMandri v. Judkins*,
 52 Cal. App. 4th 326 (1997) ...............................................................14, 15, 16

*Long v. Graco Children's Prod. Inc.*,
 No. 13-CV-01257-WHO, 2013 WL 4655763 (N.D. Cal. Aug. 26, 2013) ............13

*Manchouck v. Mondelez Int'l Inc.*,
 No. 13–2148, 2013 WL 5400285 (N.D.Cal. Sept. 26, 2013) ...............................1

- iv -

*McGee v. S-L Snacks Nat'l,*
 982 F.3d 700 (9th Cir. 2020) ...........................................................................7

*McKinney v. Corsair Gaming, Inc.,*
 No. 22-CV-00312-CRB, 2022 WL 2820097 (N.D. Cal. July 19, 2022) ...................................8

*Melendres v. Arpaio,*
 784 F.3d 1254 (9th Cir. 2015) ..........................................................................8

*Morgan v. Wallaby Yogurt Co., Inc.,*
 No. 13-CV-00296-WHO, 2013 WL 5514563 (N.D. Cal. Oct. 4, 2013) ................................10

*Mullins v. Direct Digital, LLC,*
 No. 13-cv-1829, 2014 WL 5461903 (N.D. Ill. Sept. 30, 2014), *aff'd,* 795 F.3d
 654 (7th Cir. 2015 .......................................................................................10

*Naimi v. Starbucks Corp.,*
 798 F. App'x 67 (9th Cir. 2019) ........................................................................7

*Nathan v. Vitamin Shoppe, Inc.,*
 No. 3:17-cv-01590-BEN, 2019 WL 1200554 (N.D. Cal. Mar. 12, 2019) ..............................5

*Onaka v. Shiseido Americas Corp.,*
 No. 21-CV-10665-PAC, 2023 WL 2663877 (S.D.N.Y. Mar. 28, 2023) ...............................6

*Parris v. 3M Co.,*
 595 F. Supp. 3d 1288 (N.D. Ga. 2022) ..............................................................20

*Patterson v. RW Direct, Inc.,*
 No. 18-cv-55-VC, 2018 WL 6106379 (N.D. Cal. Nov. 21, 2018) ....................................8

*Phillips Petroleum Co. v. Shutts,*
 *472 U.S. 797 (1985)* ...................................................................................8

*Reid v. Johnson & Johnson,*
 780 F.3d 952 (9th Cir. 2015) ......................................................................20, 21

*Roth v. Jennings,*
 489 F.3d 499 (2d Cir. 2007) ...........................................................................9

*Sanford v. MemberWorks, Inc.,*
 625 F.3d 550 (9th Cir. 2010) ........................................................................17

*Schloegel v. Edgewell Pers. Care Co.,*
 No. 4:21-CV-00631-DGK, 2022 WL 808694 (W.D. Mo. Mar. 16, 2022)...........................5

*Sciortino v. Pepsico, Inc.*,
108 F. Supp. 3d 780 (N.D. Cal. 2015) ................................................................21

*United States ex rel. Sheet Metal Int'l Assoc., Local Union 20 v. Horning Invs., LLC*,
828 F.3d 587 (7th Cir. 2016) ................................................................20

*Smith v. Allmax Nutrition*,
No. 1:15-cv-00744-SAB, 2015 WL 9434768 (E.D. Cal. Dec. 24, 2015)................................5

*Solis v. Coty, Inc.*,
No. 22-CV-0400-BAS-NLS, 2023 WL 2394640 (S.D. Cal. Mar. 7, 2023) ............................6

*Stuve v. Kraft Heinz Co.*,
No. 21-CV-1845, 2023 WL 184235 (N.D. Ill. Jan. 12, 2023) ................................10

*Sultanis v. Champion Petfoods USA Inc.*,
No. 21-cv-162-EMC, 2021 WL 3373934 (N.D. Cal. Aug. 3, 2021) ................................8

*Tucker v. Post Consumer Brands, LLC*,
2020 WL 1929368 (N.D. Cal. Apr. 21, 2020) ................................................12

*United States v. Gen. Dynamics Corp.*,
828 F.2d 1356 (9th Cir. 1987) ................................................................20

*Vess v. Ciba Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ................................................................17

*Warren v. Whole Foods Mkt. California, Inc.*,
No. 21-cv-04577-EMC, 2022 WL 2644103 (N.D. Cal. July 8, 2022) ................................4

*Williams v. Gerber Products Co.*,
552 F.3d 934 (9th Cir. 2008) ................................................2, 11, 12, 13

*Wilson v. Hewlett-Packard Co.*,
668 F.3d 1136 (9th Cir. 2012) ................................................................16

*Zapata Fonseca v. Goya Foods Inc.*,
No. 16-CV-02559-LHK, 2016 WL 4698942 (N.D. Cal. Sept. 8, 2016)................................5

*Zeiger v. WellPet LLC*,
304 F. Supp. 3d 837 (N.D. Cal. 2018) ................................................................7

*Zemola v. Carrington Tea Co.*,
LLC, No. 17CV760-MMA (KSC), 2017 WL 4922974 (S.D. Cal. Oct. 30, 2017) ................................18

**Statutes**

21 U.S.C. § 360k ..............................................................................................................10

Cal. Com. Code § 2314 ....................................................................................................19

California False Advertising Law .......................................................................................2

California's Consumers Legal Remedies Act ..............................................................2, 10

California Unfair Competition Law .............................................................................2, 10

Federal Food, Drug, and Cosmetic Act ...............................................................2, 9, 10

Illinois Consumer Fraud and Deceptive Business Practices Act .......................................2

Magnuson-Moss Warranty Act ........................................................................................18

Song-Beverly Act .............................................................................................................19

**Rules**

21 C.F.R. § 101.100 .....................................................................................................9, 10

Fed. R. Civ. P. 9 .......................................................................................................17, 18

Fed. R. Civ. P. 12 .........................................................................................................4, 9

Fed. R.Civ. P. 23 ..............................................................................................................8

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS                    Case No.: 1:23-cv-01038

# INTRODUCTION

Plaintiffs Lakema Tate and Richard Ortiz brought this lawsuit to address the systematic and widespread presence of harmful chemicals in Defendant's Bolthouse Farms-branded Green Goodness Fruit Juice Smoothie, Amazing Mango Fruit Juice Smoothie, Blue Goddess Fruit Juice Smoothie, C-Boost Fruit Juice Smoothie, and Berry Superfood Boost (collectively the "Products"). Defendant suggests that Plaintiffs concede in the First Amended Complaint ("FAC")[1] that per- and polyfluoralkyl substances (collectively "PFAS") are "unavoidable" and "ubiquitous in the environment." Defendant's Motion to Dismiss ("MTD")[2] at 6, 16.  Plaintiffs allege no such thing in the FAC; rather, Plaintiffs allege that Defendant sells ready-to-drink that make very clear representations that they are nutritious and healthy "100% Fruit Juice Smoothie[s]". FAC ¶ 1.

Instead of acknowledging that the Products are adulterated and misbranded and seeking to make consumers whole, Defendant attempts to snuff out this lawsuit in its infancy, depriving Plaintiffs and its other customers of their day in court.  In its motion seeking dismissal, Defendant employs a flurry of ineffectual arguments, and each should be rejected.

*First*, Defendant claims even if there is PFAS within the Products, Plaintiffs do not have Article III standing because they did not allege the specific Products they purchased and ingested contained PFAS. MTD at 8. This is incorrect, as Plaintiffs have unequivocally alleged a concrete economic injury stemming from their purchases of the Products. FAC ¶¶ 118-125. Courts in the Ninth Circuit routinely find Article III standing when a plaintiff alleges, as Plaintiffs do here, that they had known the truth, they would not have purchased a product or would have paid less for it. *See Manchouck v. Mondelez Int'l Inc.*, No. 13–2148, 2013 WL 5400285, *2 (N.D.Cal. Sept. 26, 2013) (finding plaintiff had both constitutional and statutory standing without specifically quantifying the amount of the price premium paid); *Jones v. ConAgra Foods, Inc.*, 912 F.Supp.2d 889, 901 (N.D.Cal.2012) (same); *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 961–62 (N.D. Cal. 2013) (same).

*Second*, Defendant argues Plaintiffs' claims are preempted, but preemption does not apply

---

[1] (ECF No. 15).
[2] (ECF No. 17)

here. The FDCA prohibits adulterated and misbranded foods like Defendant's smoothie beverages. Plaintiffs' claims thus merely seek to enforce requirements under the FDCA via consumer protection statutes.

*Third*, Defendant argues that Plaintiffs do not state any viable cause of action under the California's Consumers Legal Remedies Act ("CLRA"), California False Advertising Law ("FAL"), California Unfair Competition Law ("UCL"), and Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") because Plaintiffs have not alleged the Products contain representations that they are free from chemicals or artificial ingredients, or that Bolthouse intentionally added PFAS to its Products. MTD at 15. This argument ignores the numerous other misleading statements Defendant makes about the Products, the totality of which are contradicted by the presence of PFAS-- a harmful substance that has been conclusively linked to cancer and other harmful human ailments such as decreased fertility, developmental effects or delays in children, increased risk of cancers, liver damage, increased risk of asthma and thyroid disease, adverse impacts on the immune system, interference with hormones and increased cholesterol levels. FAC ¶ 128. How a reasonable consumer would interpret a products' labels is a question of fact that can only be resolved after evidence is presented. *Williams v. Gerber Products Co*., 552 F.3d 934, 938-39 (9th Cir. 2008) *citing Linear Technology Corp. v. Applied Materials, Inc*., 152 Cal.App.4th 115, 134–35 (2007).

Lastly, Defendant argues that Plaintiffs' warranty claims are deficient because the representations made by Defendant are not an "explicit statement…the Products were promised to be PFAS-free". MTD at 22. As detailed in Plaintiffs' Amended Complaint, whether the Products' representations could reasonably induce consumers to believe that the Products are healthy is, again, a question of fact for a jury to decide and Plaintiffs' understanding is consistent with a reasonable consumer's interpretation of the label.

Plaintiffs' important consumer class action lawsuit should not be dismissed at this early stage. Plaintiffs have stated claims for Defendant's large-scale sale of adulterated and misbranded Products, and she should be permitted to move forward in vindicating their rights and the rights of other affected consumers. Defendant's Motion should be denied in its entirety.

## FACTUAL BACKGROUND

Defendant markets and sells the Products, which are touted as "100% Fruit Juice Smoothie[s]" that consumers can "feel good" about, throughout the United States at mass market retailers including Walmart, Target, Whole Foods, Harris Teeter, and CVS. FAC ¶¶ 22-25. When viewing the Products' front label, consumers are immediately confronted with numerous health-focused representations that are intentionally designed to convince reasonable consumers that the Products are nutritious, healthy, and good for the human body, including a litany of representations about the vitamins, nutrients, and other wellness benefits of the ingredients contained within the Products. *Id.* ¶¶ 25-39. Defendant's uniform and pervasive marketing campaign can be easily summarized by its primary trademarked slogan, "Feel Good Nutrition," which it admits is designed to convey to consumers "all the bountiful goodness on the inside" of the Products, including "loads of thoughtful ingredients." *Id.* ¶ 25.. Defendant's emphasis on "Feel Good Nutrition" and being transparent about the safety and quality of its ingredients extends beyond the Products' label to its website where it states "[t]ransparency.. [w]e've promised to use fewer ingredients that people don't want…[a]nd more of the ones they do". *Id.* ¶ 35.

However, there is nothing to "Feel Good" about when ingesting the Products. Despite Defendant's numerous health-focused representations, Plaintiffs' independent testing of the Products found a number of PFAS present in the Products, including: Perfluoro-1-butanesulfonic acid ("PFBS"); Perfluorohexanesulfonic acid ("PFHxS"), Perfluoro-n-heptanoic acid ("PFHpA"); Perfluoro-n-pentanoic acid ("PFPeA"); and PFOS. *Id.* ¶ 64. The PFOA in the Products alone was detected at more than **300 times** the EPA's current recommended levels of exposure. *Id.* ¶ 68. This is particularly worrisome, as the EPA notes that the negative health effects from PFAS begin at much lower levels than previously understood—in some cases at near zero levels. *Id.* ¶ 66.

Peer-reviewed scientific research has uniformly found that PFAS chemicals such as those detected in the Products are associated with many serious health issues, and the harmful effects are only compounded by the fact that there is no treatment to remove PFAS from the body. *Id.* ¶ 56. Because of its bioaccumulative nature, PFAS ingested in adulterated products like Defendant's Products remains in the body and accumulates over time. *Id.*

Defendant cannot escape liability for its affirmative representations by simply arguing that the presence of PFAS in its Products is unavoidable. MTD at 5-6. Defendant engaged in a purposeful, wide-spread marketing campaign to differentiate its Products from other juice products on the market by convincing reasonable consumers that the Products were thoughtfully made with "Feel Good Nutrition." Plaintiffs reasonably believed they were purchasing healthy juice beverages that were safe for use and human consumption and were free from harmful ingredients such as synthetic chemicals known to negatively impact the environment and human health, and these representations formed the basis of the bargain between Plaintiff and Defendant. FAC at ¶¶ 119, 123. Plaintiffs and consumers at-large have been purchasing and consuming Products on a number of occasions, continually accumulating the PFAS "forever chemicals" in their bodies all the while. Throughout this time, Defendant profited off of unsuspecting consumers who paid a price premium for the adulterated and misbranded Products. If the company had been truthful about the presence of PFAS in the Product, which renders it far from "feel good nutrition," it could not have charged as much for the Products. Plaintiffs have brought suit to hold Defendant accountable for this longstanding and ongoing harm to consumers, alleging violations of California and Illinois consumer protection statutes as well as common law claims. *Id.* ¶ 165–272.

## ARGUMENT

### I.  Plaintiffs Have Article III Standing to Pursue Their Claims

#### A.  Plaintiffs Have Plausibly Alleged That They Purchased Products Containing PFAS

Lacking a legal basis to attack Plaintiffs' claims, Defendant resorts to misconstruing and attacking the sufficiency of Plaintiffs' factual allegations. Information regarding Plaintiffs' testing methodologies and analytical findings may be proper subjects for discovery, but these details have no bearing on the motion dismiss. Even if there were any alleged inadequacies in methodology or interpretation of scientific testing (which there are not), this still would not warrant dismissal under Rule 12(b)(6) so long as the Court can still reasonably infer from the testing results and other alleged facts, taken as true, that the defendant is liable for the misconduct alleged. *Warren v. Whole Foods Mkt. California, Inc.*, No. 21-cv-04577-EMC, 2022 WL 2644103, at *6 (N.D. Cal. July 8,

2022). In another case involving PFAS chemicals, a court in this district rejected a similar argument noting that the defendant's arguments "regarding the testing itself" and "what methods were used" seemed "to be arguing predominantly about the merits of Plaintiffs' claims, which is inappropriate at the motion to dismiss stage." *Kanan v. Thinx Inc*., No. CV 20-10341 JVS, 2021 WL 4464200, at *5 (C.D. Cal. June 23, 2021); *see also Zapata Fonseca v. Goya Foods Inc.*, No. 16-CV-02559-LHK, 2016 WL 4698942, at *6 (N.D. Cal. Sept. 8, 2016); *Smith v. Allmax Nutrition*, No. 1:15-cv-00744-SAB, 2015 WL 9434768, at *7 (E.D. Cal. Dec. 24, 2015); *see also Gallagher v. Bayer AG*, No. 14-cv-04601-WHO, 2015 WL 4932292, at *19 (N.D. Cal. Aug. 18, 2015); *Nathan v. Vitamin Shoppe, Inc*., No. 3:17-cv-01590-BEN, 2019 WL 1200554, at *13 (N.D. Cal. Mar. 12, 2019).

Defendant mistakenly relies on *Bowen v. Energizer Holdings, Inc.*, No. CV 21-4336-MWF, 2023 WL 1786731, at *1 (C.D. Cal. Jan. 5, 2023), an outlier case which is factually and legally inapposite. In *Bowen*, plaintiff alleged omissions-based claims stemming from the presence of benzene in sunscreen. Unlike this case, where Plaintiff alleges affirmative misrepresentations, the *Bowen* plaintiff's claims were based solely on a risk of future harm, which the court found too speculative to confer Article III standing. *Id*. at *8. Notably, the court engaged in a highly fact-specific evaluation of the safety risks posed by benzene, an approach which has been criticized by other courts as "inappropriate" at the initial pleadings stage of a lawsuit. *See Clinger v. Edgewell Pers. Care Brands, LLC*, No. 3:21-CV-1040 (JAM), 2023 WL 2477499, at *4 (D. Conn. Mar. 13, 2023). Likewise, *Herrington v. Johnson & Johnson Consumer Cos., Inc*., C 09-1597 CW, 2010 WL 3448531, at *4 (N.D. Cal. Sept. 1, 2010), concerns increased risk-of-injury resulting from allegedly unsafe products where the plaintiff failed to allege they were persuaded to buy the accused product based on an affirmative representation. The other cases cited by Defendant all involve plaintiffs' failure to obtain any independent testing and are therefore inapplicable here. *See, e.g.*, *Gaminde v. Lang Pharma Nutrition, Inc*., No. 118CV300GLS, 2019 WL 1338724, at *3 (N.D.N.Y. Mar. 25, 2019); *Schloegel v. Edgewell Pers. Care Co*., No. 4:21-CV-00631-DGK, 2022 WL 808694, at *1 (W.D. Mo. Mar. 16, 2022).

Plaintiffs have adequately alleged injury based on the presence of PFAS in the Products.

- 5 -

*See Solis v. Coty, Inc.*, No. 22-CV-0400-BAS-NLS, 2023 WL 2394640, at *11 (S.D. Cal. Mar. 7, 2023) (finding that plaintiff was not required to allege specific unit of product she purchased contained PFAS because "district courts must accept the allegations of the complaint as true and draw all reasonable inferences from those allegations in favor of the plaintiff"). The court's holding in *Onaka v. Shiseido Americas Corp*., does not compel a different result. No. 21-CV-10665-PAC, 2023 WL 2663877, at *1 (S.D.N.Y. Mar. 28, 2023). In *Onaka*, the court found plaintiffs did not state *when* they conducted their independent testing, making allegations that makeup products contained PFAS only a "sheer possibility." *Id*. at *4. The court found that failure to test plaintiff's individual products "need not be fatal if the independent testing is 'reasonably near in time' to plaintiff's own purchases."

Here, Plaintiffs still make detailed allegations which plausibly allege the presence of PFAS in their Products. "Plaintiffs tested samples of all of the Products, including Green Goodness Fruit Juice Smoothie, Amazing Mango Fruit Juice Smoothie, Blue Goddess Fruit Juice Smoothie, C-Boost Fruit Juice Smoothie, and Berry Superfood Boost," all of which were found to contain PFAS. FAC ¶¶ 61, 64. The testing was completed on February 22, 2023, which was reasonably near in time to Plaintiffs' purchases in December 2022 and January 2023, and the testing included flavors purchased by Plaintiffs. *Id*. ¶ 62. Contrary to Defendant's representations, Plaintiffs identify the detection of numerous PFAS chemicals, including significant levels of Perfluoro-1-butanesulfonic acid ("PFBS"); Perfluorohexanesulfonic acid ("PFHxS"), Perfluoro-n-heptanoic acid ("PFHpA"); Perfluoro-n-pentanoic acid ("PFPeA"); and Perfluorooctanesulfonic acid ("PFOS"). *Id*. ¶ 64. The Products were uniformly found to contain PFOS at levels higher than the EPA's 0.02 ppt lifetime health advisory level, with at least one Product containing levels of 6.32 ppt—more than 316 times the EPA's recommendation. *Id*. ¶ 68. At the pleadings stage, these allegations are sufficient for standing.

### B.    Plaintiffs Have Properly Pled An Economic Injury

Plaintiffs have adequately pled an economic injury, which is sufficient for purposes of standing. The Ninth Circuit has repeatedly held "[a] 'quintessential injury-in-fact' occurs when plaintiffs allege that they 'spent money that, absent defendants' actions, they would not have

1   spent.'" *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 846 (N.D. Cal. 2018) (quoting *Maya v.*

2   *Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011)); *see also Hinojos v. Kohl's Corp.*, 718 F.3d

3   1098, 1104 (9th Cir. 2013) ("We have explained that when, as here, 'Plaintiffs contend that class

4   members paid more for [a product] than they otherwise would have paid, or bought it when they

5   otherwise would not have done so' they have suffered an Article III injury in fact."); *McGee v. S-*

6   *L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020) ("We have consistently recognized that a

7   plaintiff can satisfy the injury in fact requirement by showing that she paid more for a product than

8   she otherwise would have due to a defendant's false representations about the product.").

9       Plaintiffs meet this burden by alleging they relied on Defendant's representations when

10  purchasing the Products, and they purchased, paid a premium, or otherwise paid more for the

11  Products when they otherwise would not have, absent Defendant's misrepresentations, false and

12  misleading statements," including the risk of PFAS in the Products and the risk of Plaintiffs'

13  exposure to PFAS. FAC ¶¶ 111, 119, 123, 135, 149; *See Dawood v. Gamer Advantage LLC*, No.

14  2:22-cv-00562 WBS, 2022 WL 3108846, at *2-3 (E.D. Cal. Aug. 4, 2022) ("Plaintiff's alleged

15  injury is that he 'purchased, paid a premium, or otherwise paid more for [FogAway] when [he]

16  otherwise would … have absent [d]efendant's misrepresentations and/or omissions' -- a purely

17  economic injury" and that "plaintiff's claims do allow for recovery for purely economic loss under

18  these circumstances."). California courts have denied motions to dismiss in similar PFAS cases.

19  *See Hamman et al. v. Cava Group, Inc.*, No. 22-cv-593-MMA, 2023 WL 3450654, at *5 (S.D.

20  Cal. Feb. 8, 2023) (finding plaintiffs successfully pleaded economic injury by asserting that they

21  would not have purchased defendant's products had they known that their packaging contained

22  "'heightened levels of fluorine,' and indicator of PFAS."); *Kanan v. Thinx Inc*., No. CV 20-10341

23  JVS, 2021 WL 4464200, at *5-6 (C.D. Cal. June 23, 2021) (finding standing where plaintiffs

24  alleged that material misstatements regarding the presence of PFAS in menstrual underwear led

25  them to purchase or pay more for products that they would not have otherwise purchased).

26      Defendant's cited authority fails to demonstrate that Plaintiffs must do more to establish

27  standing beyond alleging that they purchased the Products and/or paid a premium for the Products

28  due to the Defendant's misrepresentations and omissions. *See Naimi v. Starbucks Corp.*, 798 F.

App'x 67, 70  (9th Cir. 2019) (the court did not analyze the sufficiency of plaintiff's "price premium" allegation under either Ninth Circuit or California law); *Bonny Schippell v. Johnson and Johnson Consumer Inc.*, No. EDCV23410JGBSHKX, 2023 WL 6178485, at *2 (C.D. Cal. Aug. 7, 2023) (plaintiffs alleged injury because products labeled as "baby" were identical to "adult" formulations, but plaintiff failed to adequately allege a price differential between the two formulations which would support a price premium theory of injury).

### C.    Plaintiffs Have Standing to Assert Express Warranty Claims on Behalf of Nationwide Class

Defendant argues that Plaintiffs lack standing to bring express warranty claims on behalf of a nationwide class. What Defendant frames as an issue of standing is really a question of adequacy under Rule 23. *See Melendres v. Arpaio*, 784 F.3d 1254, 1261 (9th Cir. 2015) ("Defendants' argument ... conflates standing and class certification. … Standing is meant to ensure that the injury a plaintiff suffers defines the scope of the controversy he or she is entitled to litigate. Class certification, on the other hand, is meant to ensure that named plaintiffs are adequate representatives of the unnamed class." (cleaned up)).

There is a split of authority within the Ninth Circuit as to whether a named plaintiff in a putative class action has standing to assert claims under the laws of states where the named plaintiff does not reside. *Sultanis v. Champion Petfoods USA Inc.*, No. 21-cv-162-EMC, 2021 WL 3373934, at *5 (N.D. Cal. Aug. 3, 2021). However, there is no dispute that a district court has discretion to address this question as a part of its Rule 23 analysis at class certification. *See McKinney v. Corsair Gaming, Inc.*, No. 22-CV-00312-CRB, 2022 WL 2820097, at *12 (N.D. Cal. July 19, 2022) (citing authority). Numerous courts have chosen to take this approach, finding that "whether a plaintiff can bring claims on behalf of unnamed plaintiffs under the laws of states in which the named plaintiff does not reside or was injured is a matter of typicality, adequacy, and predominance under Rule 23, not Article III standing." *Sultanis*, 2021 WL 3373934, at *6; *Patterson v. RW Direct, Inc.*, No. 18-cv-55-VC, 2018 WL 6106379, at *1 (N.D. Cal. Nov. 21, 2018).

Nationwide class actions can be, and are, maintained in many instances. *See, e.g., Phillips*

*Petroleum Co. v. Shutts,* 472 U.S. 797, 797 (1985). Adopting Defendant's standing arguments here would preclude the certification of nationwide classes in CAFA class actions based on common law causes of action. *See Khorrami v. Lexmark Int'l, Inc.*, No. CV 07–01671, 2007 WL 8031909 at *4 (C.D. Cal. Sept. 13, 2007). (finding that were the Court to strike the nationwide class, "it would in effect be ruling that nationwide or multi-state class action suits could never exist because of the variation in each state's substantive laws") (internal citations omitted). Courts in the Ninth Circuit have routinely denied similar motions to dismiss, finding standing for plaintiffs to assert common law claims on behalf of a nationwide class of consumers. *See Cadena v. American Honda Motor Co., Inc.*, No. CV 18-4007, 2018 WL 8130613 (C.D. Cal. Nov. 14, 2018).

## II.   <u>Plaintiffs' Claims Are Not Preempted</u>

Defendant next argues that Plaintiffs' claims are preempted by the Federal Food, Drug, and Cosmetic Act ("FFDCA"), or, in the alternative, negated by an exemption to the labeling disclosure requirements. Defendants contend that "the FDA expressly exempts manufacturers from having to disclose the presence of '[i]ncidental additives that are present in a food at insignificant levels and do not have any technical or functional effect in that food,' including '[s]ubstances migrating to food from equipment or packaging or otherwise affecting food that are not food additives as defined in section 201(s) of the act.' 21 C.F.R. § 101.100(a)(3)(iii)."  According to Defendants, "[a]ny PFAS allegedly found in the product would constitute incidental additives that need not be disclosed under the FDA's regulations."  MTD at 13.

Defendant's argument is flawed for two main reasons.  First, Defendant assumes, without admissible proof, that PFAS in the Products was added "incidentally." Plaintiff does not profess to know exactly how these significant amounts of PFAS came to be present in Defendant's products.  Though Defendant infers that the PFAS in their Products materialized incidentally, these unfounded assertions are not to be accepted as true at the pleading stage, and "a ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

Moreover, even if Defendant is correct, incidental food additives are only exempt from traditional labeling requirements if they are present "at insignificant levels" and are "used in

conformity with regulations. . . ." 21 C.F.R. § 101.100(a)(3) and (a)(3)(iii).  Questions of fact plainly exist at this time as to whether PFAS are present "at insignificant levels" in Defendants' products and whether PFAS were "used in conformity with regulations."  *See Stuve v. Kraft Heinz Co.,* No. 21-CV-1845, 2023 WL 184235, at *7 (N.D. Ill. Jan. 12, 2023) ("whether phthalates are present only at an "insignificant level" is a question of fact, yet to be resolved."); *Holt v. Foodstate, Inc.,* No. 15CV78 L (JMA), 2015 WL 9592534, at *4 (S.D. Cal. Dec. 31, 2015) ("whether these additives are present in insignificant levels is a question of fact, not suited for dismissal at a preliminary stage in the proceeding.").

Plaintiffs do not seek to challenge any labeling statements that are expressly permitted by FDA regulations. Plaintiffs' state-law claims do not impose requirements that are "different from, or in addition to" the federal requirements. *See* 21 U.S.C. § 360k(a)(1). Plaintiffs allege that the Product labels are deceptive or misleading under state law—and "[t]hese state laws "exist[] independently of [the FDCA]" and provide a "valid state cause of action even if the FDA ceased to exist." *Morgan v. Wallaby Yogurt Co., Inc.,* No. 13-CV-00296-WHO, 2013 WL 5514563, at *6 (N.D. Cal. Oct. 4, 2013) (internal quotation marks and citation omitted). For these reasons, "to the extent that Plaintiffs have alleged that Defendant[] made statements that were fraudulent (i.e., literally false, misleading, or omitted material facts), [her] claims are actionable." *Souter*, 542 F. Supp. 3d at 1097 (citing *Corra v. Energizer Holdings, Inc.*, 962 F. Supp. 2d 1207, 1215 (E.D. Cal. 2013) (finding that preemption provision did not bar the plaintiff's UCL and CLRA claims because even if successful, "Defendants' [] labeling duties would remain unchanged.")).

### III.   **Plaintiffs Have Properly Pled Consumer Protection Claims**

This case centers on Defendant's pervasive marketing statements and material omissions that its Products are healthy "Feel Good Nutrition," containing "thoughtful ingredients," including various vitamins and minerals. FAC ¶¶ 23-39. These representations confirm for a reasonable consumer that the Products are free from harmful chemicals like PFAS. All of Plaintiff's consumer protection claims are governed by an objective reasonable consumer standard. *Mullins v. Direct Digital, LLC*, No. 13-cv-1829, 2014 WL 5461903 (N.D. Ill. Sept. 30, 2014), *aff'd*, 795 F.3d 654 (7th Cir. 2015) (California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New

Jersey, New York, and Washington consumer protection laws are materially identical). California courts have defined the proverbial "reasonable consumer" as "the ordinary consumer acting reasonably under the circumstances" and not one who is "versed in the art of inspecting and judging a product, in the process of its preparation or manufacture." *Davis v. Rebel Creamery LLC*, No. 22-cv-04111-TSH, 2023 WL 2620900, at *6 (N.D. Cal. Mar. 23, 2023) (citing *Lavie v. Procter & Gamble Co*., 105 Cal. App. 4th 496, 508 (2003)); *Elias v. Hewlett-Packard Co.*, 903 F. Supp.2d 843, 854 (N.D. Cal. 2012) (citing *Colgan v. Leatherman Tool Grp., Inc*., 38 Cal. Rptr. 3d 36, 48 (Cal. Ct. App. 2006)).

Under the reasonable consumer test, not only is patently false marketing actionable, "but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Williams*, 552 F.3d at 938. The Ninth Circuit has instructed that the reasonable consumer standard is usually a factual inquiry rarely suitable for resolution as a matter of law based on the pleadings. *See id*. at 938-39.

### A.    Plaintiffs Have Alleged Actionable Misrepresentations

Defendant attempts to parse out specific prominent label representations to tell a self-serving story that cuts against its entire brand aura. Defendant asks this Court to weigh a reasonable consumer's understanding of its representations and conclude that it's health-focused marketing is not misleading despite the presence of forever chemicals at levels hundreds of times higher than the EPA's recommended limits for exposure in drinking water.

Specifically, Defendant contends that the statements identified in the FAC are not actionable, as they do not advertise the Products as "PFAS-free." This is incorrect. Defendant has engaged in a pervasive, multi-channel marketing campaign designed to convince consumers that its Products are healthy and nutritious, including a litany of health-focused claims such as "good source of Antioxidant C and Vitamin B12," "no sugar added," "100% Fruit Juice Smoothie," and "Feel Good Nutrition," among others. FAC ¶¶ 23-39. California courts look at the cumulative effects of labeling and marketing—including website representations-- in determining whether a reasonable consumer would be misled. *See Kutza v. Williams-Sonoma, Inc.*, No. 18-CV-03534-RS, 2018 WL 5886611, at *4 (N.D. Cal. Nov. 9, 2018) ("[Defendant] asks too much, however,

- 11 -

when it seeks a determination as a matter of law on the pleadings...that no reasonable consumer would be misled by the cumulative effects of the labeling and marketing alleged in the complaint"); *Tucker v. Post Consumer Brands, LLC*, 2020 WL 1929368, at *5 (N.D. Cal. Apr. 21, 2020) (although the package did not make any objective representations about the amount of honey in the cereal, "a reasonable consumer could see the prominent honey-related words and imagery [including a radiating sun and a honey dipper dripping honey, along with the brand name "Honey Bunches of Oats] and be deceived into thinking the cereal contained relatively less refined sugar and more honey."). Furthermore, California state consumer protection statutes "prohibit 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.' " *Kasky v. Nike, Inc.,* 27 Cal.4th 939, 951 (2002) (quoting *Leoni v. State Bar,* 39 Cal.3d 609, 626 (1985)).

Courts have rejected similar motions to dismiss, including in cases where multiple terms contributed to the deceptive context of the packaging as a whole, as is the case here. *Williams v*, 552 F.3d at 939 (finding that package had a number of features that could likely deceive a reasonable consumer into believing snacks were healthy and contained certain fruits). This case is nothing like *Hadley v. Kellogg Sales Co*., 243 F. Supp. 3d 1074, 1093 (N.D. Cal. 2017), where the court dismissed plaintiff's false advertising claims because there was no logical connection between the statement "MADE WITH Real Fruit" and the presence (or lack therof) of trans fat such that reasonable consumers could be deceived. Unlike *Brown v. Starbucks Corp.,* No. 18CV2286 JM (WVG), 2019 WL 996399, at *4 (S.D. Cal. Mar. 1, 2019), where the court found plaintiff failed to explain any connection between Starbucks' health and wellness campaign and its use of artificial ingredients, Plaintiffs have clearly alleged a pervasive marketing strategy designed to increase sales by selling Products advertised as "nutritious," "healthy," "good for you," and full of fruit, vitamins, minerals, and other beneficial ingredients—despite the fact that they contain chemicals conclusively linked to negative health effects.

## B.    Defendants' Statements Are Not Mere Puffery

Defendant argues that its "FEEL GOOD NUTRITION" representations are mere "puffery." Like *Williams*, even unquantifiable terms may be found actionable when accompanied

by other words and images. 552 F.3d at 939 n.3. *See also Delacruz v. Cytosport, Inc.,* which involved the term "healthy fats," No. C 11–3532–CW, 2012 WL 1215243 , at *6 (N.D. Cal. April 11, 2012) (finding that "healthy fat" was actionable because it could deceive a reasonable consumer into believing that the product had unsaturated fat rather than saturated fat, i.e., the term was susceptible to proof). Plaintiffs have alleged numerous representations which contribute to a reasonable consumer's belief that the Products are free from toxic chemicals. This case is nothing like *Long v. Graco Children's Prod. Inc.,* No. 13-CV-01257-WHO, 2013 WL 4655763, at *5 (N.D. Cal. Aug. 26, 2013), where plaintiff alleged that defendant misrepresented the characteristics of its baby seat buckle, but the only actual statement plaintiff alleged was the "5–point, front-adjust harness helps you get baby in and out."

The Ninth Circuit has previously advised that whether a set of statements qualify as misleading "will usually be a question of fact not appropriate for decision on [a motion to dismiss]." *Williams*, 552 F.3d at 938; *see also Bietsch v. Sergeant's Pet Care Prods., Inc*., No. 15 C 5432, 2016 WL 1011512, at *3 (N.D. Ill. Mar. 15, 2016).

### C. Plaintiffs Have Pled Actionable Omissions

Defendant contends that Plaintiffs do not allege sufficient facts to support their omission-based claims. Motion at p. 18. Omissions are actionable under California Law when they are "contrary to a representation actually made by the defendant" or are "of a fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc*., 891 F.3d 857, 861 (9th Cir. 2018) (cleaned up) (quoting *Daugherty v. Am. Honda Motor Co*., 144 Cal. App. 4th 824 (2006)). The Amended Complaint adequately alleges both theories.

First, the FAC alleges that Defendant made affirmative representations about the Products, including that they were nutritious, healthy, "100% fruit juice smoothie" and were subject to comprehensive quality control measures. FAC ¶¶ 1, 4, 113. Plaintiffs further allege that those representations were not true because the Products contained PFAS. *Id*. ¶¶ 8, 107. Accordingly, Defendant omitted information (that the Products contained PFAS) that was contrary to Defendant's representations concerning the contents and quality of the Products. Defendant's misleading partial representations give rise to an actionable omission claim. *See Anderson v. Apple*

- 13 -

*Inc.,* 500 F. Supp. 3d 993, 1014 (N.D. Cal. Nov. 16, 2020) (denying motion to dismiss omission claim where Plaintiff alleged that Defendant's representation that three phones had the same Wi-Fi capabilities omitted the fact that using a certain antenna resulted in different Wi-Fi capabilities); *Augustine v. Talking Rain Bev. Co*., 386 F. Supp. 3d 1317, 1330 (S.D. Cal. April 12, 2019) (holding that misrepresentation that a product contained only natural ingredients when it actually contained an undisclosed artificial supported a plausible fraudulent omission claim).

Second, Plaintiff has plausibly alleged that Defendant had an obligation to disclose the presence of PFAS in the Products. To show a duty to disclose, the plaintiff must 1) allege that the omission was material; 2) plead that the defect was central to the product's function or a safety hazard ; and 3) allege one of the *LiMandri* factors : a) the defendant is in a fiduciary relationship with the plaintiff; b) defendant had exclusive knowledge of material facts not known to the plaintiff; c) the defendant actively concealed a material fact from the plaintiff; or d) when the defendant makes partial representations but also suppresses some material facts *Hodsdon*, 891 F.3d at 863 (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997).

The FAC plausibly alleges that the presence of PFAS is material to consumers.  "[A] fact is deemed 'material,' and obligates an exclusively knowledgeable defendant to disclose it, if a 'reasonable [consumer]' would deem it important in determining how to act in the transaction at issue.'" *Elias*, 950 F. Supp. 2d at 1135  (quoting *Collins v. eMachines, Inc*., 202 Cal. App. 4th 249, 256 (2011)).  The FAC alleges that consumers consider the presence of chemicals when purchasing food products, and supports those allegations with reference to recent consumer surveys showing, for example, that "the majority of consumers surveyed said they prioritize the health/safety of products (71%) and products free of certain toxic chemicals (70%)" and that "[t]he majority of shoppers . . . are willing to spend more for a product they know is safer, with 42% willing to spend 5-15% more, 36% willing to spend 16-25% more, and 17% willing to spend 1-5% more."  FAC ¶¶ 74-77.  Indeed, other courts have concluded that the materiality of contaminants in food products is obvious without such supporting research.  *See Grossman v. Schell & Kampeter, Inc.,* No. 2:18-CV-02344-JAM-AC, 2019 WL 1298997, at *5 (E.D. Cal. Mar. 21, 2019) (noting that defendant did not attempt to contest the materiality of the presence of heavy metals in pet food

products).  Plaintiffs also allege that they would not have purchased the Products had they known about the presence of PFAS, which is sufficient in and of itself to plead materiality.  (FAC ¶¶ 86, 111, 119, 123).  *See Apodaca v. Whirlpool Corp.,* No. SACV 13-00725 JVS, 2013 WL 6477821, at *8 (C.D. Cal. Nov. 8, 2013) (*"*The FAC's allegations that Plaintiffs would not have purchased their dishwashers had they known of the defect, combined with allegations of the severity of the alleged defect, suffice to allege materiality.").  Moreover, nondisclosures about safety considerations of consumer products are *per se* material. *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1096 (N.D. Cal. 2007).

Here Plaintiffs have also alleged that the presence of PFAS in the products is a safety hazard for consumers.  These allegations are not speculative or conclusory as Defendant contends *See* MTD at 18-19.  Rather, Plaintiffs' allegation that PFAS is unsafe is supported by allegations that the FDA has banned long-chain PFAS (FAC ¶¶ 103-104), as well as references to studies concluding that "PFAS have been shown to have a number of toxicological effects in laboratory studies and have been associated with thyroid disorders, immunotoxicity effects, and various cancers in epidemiology studies" and  identifying "a host of health effects associated with PFAS exposure, including cancer, liver damage, decreased fertility, and increased risk of asthma and thyroid disease." *Id*.  ¶¶ 2-3. Accordingly, the FAC plausibly alleges that the presence of PFAS in the Products poses a safety risk to the Plaintiffs and other consumers.  *See Apodac*a, 2013 WL 6477821, at *9 (holding that the complaint adequately ped a safety hazard by describing how the alleged product defect could cause overheating and lead to a fire).

The FAC also plausibly pleads a number of the *LiMandri* factors.  First, Plaintiffs allege that Defendant had exclusive knowledge of the presence of PFAS in the Products.   The "exclusive knowledge" prong of *LiMondri* has not been applied "with rigidity." *Czuchaj v. Conair Corp.*, No. 13–CV–1901, 2014 WL 1664235, at *4 (S.D. Cal. Apr. 18, 2014) (collecting cases).   "The defendant need not have literally been the sole holder of the knowledge. It is generally sufficient for defendants to have had 'superior knowledge' and for the information to have not been reasonably discoverable by the plaintiffs." *Anderson v. Apple Inc*., 500 F. Supp. 3d 993, 1014 (C.D. Cal. Nov. 16, 2020) (quoting *Czuchaj*, 2014 WL 1664235, at *4).  The FAC sufficiently

- 15 -

pleads Defendant's exclusive knowledge of the PFAS in its products by alleging that it controlled the sourcing and manufacturing methods of the Products, information which was not available to Plaintiffs of the general public.  FAC ¶ 70.  *See In re Big Heart Pet Brands Litig.,* No. 18-CV-00861-JSW, 2019 WL 8266869, at *20 (N.D. Cal. Oct. 4, 2019) (allegations concerning pre-release testing of the product were sufficient to show how the testing would make Defendant aware of the alleged contaminant in the products); *Grossman,* 2019 WL 1298997, at *5 (defendant had exclusive knowledge of contaminants in product based on allegations about its knowledge of its "production and stringent standards."); *Apodaca*, 2013 WL 6477821, at *8 (exclusive knowledge prong of *LiMondri* satisfied where "the FAC also alleges that Defendant had exclusive knowledge through testing at the design stage that would have revealed the alleged defect." *See also  Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1146 (9th Cir. 2012) (discussing with approval cases finding exclusive knowledge successfully alleged from allegations of consumer reports and testing results); *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1096-97 (N.D. Cal. 2007) (noting allegations of pre-release testing data and customer complaints sufficient to allege exclusive knowledge, even where complaints were available over the Internet to potential customers).

As discussed above, Defendant also made misleading partial representations Products. Specifically, the labels on Defendant's Products represented that they were "100% fruit juice smoothie" while suppressing the material fact that they contained PFAS.  FAC ¶ 1.   That representation specifically relates to the composition of the Products, the true nature of which Defendant failed to reveal to consumers.  *See Apodaca*, 2013 WL 6477821, at *4 (holding that omission claims were actionable based on partial representations about "commercial grade parts" in a product that caught fire due to a design defect).  Accordingly, the FAC adequately alleges at least two of the *LiMandri* factors, and Plaintiffs have plausibly pled actionable omissions claims under California law.

With respect to Plaintiffs' omission claim under the IFCA, that claim is well-pled because it identifies an omission from a specific communication from Defendant, rather than a general failure to disclose.  In particular, the FAC alleges that the Products' labels represented that they were "100% fruit smoothie".  FAC ¶ 1.  There is a direct connection between that representation

about the content and ingredients of the Products, and Defendants' failure to disclose the presence of PFAS in the products.  *See Bojko v. Pierre Fabre USA Inc.*, No. 22 C 6728, 2023 WL 4204663, at \*8 (N.D. Ill. June 27, 2023) (holding that product labels that failed to disclose the presence of benzene gave rise to an actionable omission claim under the IFCA and that the allegations were not "vague accusations about inadequate disclosures, but specific alleged omissions") (internal quotation marks omitted).

### D.    Plaintiffs Satisfy Rule 9(b) Pleading Standards

The FAC satisfies the pleading requirements of Fed. R. Civ. P. 9(b) by describing, in detail, "the who, what, when, where, and how" regarding Defendant's misleading representations and omissions.  *Vess v. Ciba Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). The FAC sets forth each of these facts with sufficient specificity to "give defendants notice of the particular misconduct which is alleged to constitute the fraud charged."  *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010).  The Complaint states that Defendant (the "who") falsely represented that the Products are nutritious, healthy, and "100% Fruit Juice Smoothie," when, in fact, they are not because they contain PFAS chemicals (the "what") (FAC ¶ 1), that the Plaintiffs and Class Members purchased specific Products[3] as recently as December 2022 (Plaintiff Ortiz, FAC ¶ 122) and January 2023 (Plaintiff Tate, FAC ¶ 118) (the "when") from a Walmart store in Illinois and a Target location in  Los Angeles, California (FAC ¶ 118, 122) , and that the plaintiffs relied on these representations, which were placed prominently on the products' packaging (the "where") (FAC. ¶¶ 119, 123).

The Court in *In re ConAgra Foods, Inc*. 908 F. Supp. 2d 1090, 1100 (C.D. Cal. Nov. 15, 2012) considered claims sounding in fraud arising out of the defendant's labeling of oil as "100% Natural." The complaint alleged that the plaintiffs purchased the product within a specified time frame (the class period) with a given frequency (the "when"), that the label appeared on the packaging (the "where") during the class period (another "when"), and that the label was false and

---

[3] Plaintiff Tate specifically identifies the Green Goodness and Mango Cherry C-Boost Products (FAC ¶ 118).  Plaintiff Ortiz specifically identifies the Amazing Mango, Green Goodness, Blue Goodness, Mango Cherry C-Boost, and Berry Superfood Boost Products ((FAC ¶ 118).

misleading because the product contained bioengineered ingredients, and such ingredients are not all natural (the "how"). *Id* at 1100. An even greater of detail is provided in the allegations presented in the FAC which further explains the "when" by providing the specific month and year of Plaintiffs' final purchases, the "where" by providing pictures of the deceptive labeling on the of the Products, and the "what" by providing specific allegations with respect to dangers of PFAS chemicals (FAC ¶¶ 40-59) and the results of Plaintiffs' independent testing of the Products. FAC ¶¶ 60-68.

Finally, Plaintiffs' omission-based claims are subject to a relaxed standard under FRCP 9(b). "'[A] plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim,' and such a claim 'will not be dismissed purely for failure to precisely state the time and place of the fraudulent conduct.'" *Holley v. Gilead Scis., Inc.*, 379 F. Supp. 3d 809, 817 (N.D. Cal. 2019) (quoting *Falk v. Gen. Motors Cop.*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007)). In any event, as set forth above, the FAC specifically alleges the time and place of Defendant's fraudulent conduct, and accordingly meets the Rule 9(b) standard for affirmative representations as well as omissions.

### IV.   Plaintiffs' Warranty Claims are Adequately Pled.[4]

#### A.   Plaintiffs' Express Warranty Claims are Sufficiently Pled

Defendant argues that Plaintiff has not "identify an "affirmation of fact or promise" or a "description of the goods" that Bolthouse breached." MTD at 22. Here, Plaintiffs claims that Defendant advertise that is products are healthy and wholesome, when they contain PFAS chemicals. *See* FAC at ¶¶ 23-35. Advertising a product in such a manner is sufficient to state a warranty claim under California law. *Zemola v. Carrington Tea Co*., LLC, No. 17CV760-MMA (KSC), 2017 WL 4922974, at *6 (S.D. Cal. Oct. 30, 2017) ("Defendant 'made affirmations of fact or promises, or description of goods, that, inter alia, the product is 'healthy,' and 'breached its express warranties by selling a product that is not healthy, not healthier than butter or other oils, and that negatively affects cholesterol levels, increasing risk of CHD, stroke, and other morbidity.'

---

[4] Plaintiff does not oppose dismissal of the Magnuson-Moss Warranty Act claim.

… These allegations are sufficient to state plausible warranty claims under California law.")

**B.     Plaintiffs Implied Warranty Claims Are Sufficiently Pled**

As to implied warranty of merchantability (and the related Song-Berly Act) claims, Plaintiffs sufficiently pled that the goods are "fit for the ordinary purposes for which such goods are used." Cal. Com. Code § 2314; *see Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 26-27 (2007).   And as the statute expressly states, a product is only merchantability if it can "pass without objection in the trade under the contract description" and "are fit for the ordinary purposes for which such goods are used."   Cal. Com. Code § 2314(2)(a) & (c).   California courts have rejected Defendant's suggestion that the implied warranty of merchantability can only be invoked if a "drink is not a drink."   Motion at p. 24.   For example, *Isip v. Mercedes-Benz USA, LLC*, in the California Second District Court of Appeal held that the implied warranty of merchantability does not mean that a vehicle is only unfit "if it does not provide transportation," as this was "an unjustified dilution of the implied warranty of merchantability."   *Id.,* 155 Cal. App. 4th 19, 27 (2007).   Instead, the Court held that a vehicle must be "in safe condition and substantially free of defects" to pass muster under section 2314.   A different result should not follow here.

If a beverage has the risk of containing harmful chemical PFAS chemicals, they are not fit for human consumption and would not pass without objection as a beverage.   Indeed, the Complaint notes that the amount of PFAS chemicals exceeds the EPA guidelines for drinking water.   FAC ¶¶ 67-68.   Additionally, as Defendant notes, the "FDA has engaged in an extensive sampling and testing program since 2019 to assess the presence of PFAS in the food supply." Motion at p. 25 citing Ex. 8; RJN at 5-6.   This same testing program has found that "[n]o PFAS has been detected in over 97% (701 of 718) of the fresh and processed food tested" (which includes beverages such as milk and water) and the PFAS that was found was in seafood samples.   Ex. 8; RJN at ECF page 3-4.   Accordingly, the Defendant's argument that beverages that contain PFAS, even in sufficient levels, are not objection in trade is misplaced.   Instead, all the cites source are in lock step, PFAS should not be in beverages and is harmful.   Plaintiffs' implied warranty claims are properly pled.

### C.   The Court Should Not Stay this Action Under the Doctrine of Primary Jurisdiction

Defendant's final argument is that the case should be stayed for an indefinite period under the doctrine of primary jurisdiction.  MTD at 24.  "Primary jurisdiction is a permissive doctrine that applies when resolving a claim 'requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body.'"  *United States ex rel. Sheet Metal Int'l Assoc., Local Union 20 v. Horning Invs., LLC*, 828 F.3d 587, 592 (7th Cir. 2016).  But, as noted by other courts:

> not every case that implicates the expertise of federal agencies warrants invocation of primary jurisdiction…rather, the doctrine is reserved for a limited set of circumstances that requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency.

*Astiana v. Hain Celestial Grp., Inc*., 783 F.3d 753, 760 (9th Cir. 2015).

There is no fixed formula for applying the doctrine and "the decision to whether to [do so] depends upon a case-by-case determination whether, in view of the purposes of the statute involved, and the relevance of administrative expertise to the issue at hand, a court ought to defer initially to the administrative agency."  *Bradford Sch. Bus Transit v. Chi. Transit Auth*., 537 F.2d 943, 949 (7th Cir. 1976).  Factors to be considered include "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration."  *United States v. Gen. Dynamics Corp*., 828 F.2d 1356, 1362 (9th Cir. 1987).  But "the 'deciding factor' in determining whether the primary jurisdiction doctrine should apply is efficiency."  *See Reid v. Johnson & Johnson*, 780 F.3d 952, 967 (9th Cir. 2015).  When the relevant factors are actually examined, Defendant's request to stay the action should be denied.

While Defendant suggest that the "proper threshold(s) for PFAS in beverage products" is will need the FDA's complex "technical" considerations.  This is not true.  *Parris v. 3M Co*., 595 F. Supp. 3d 1288, 1313 (N.D. Ga. 2022).  Plaintiffs' complaint is not sole about at which level PFAS chemicals become prohibited, but whether Plaintiffs have suffered economic harm from purchasing beverages that did not disclose that it contained (or had the risk of containing) harmful

causing chemicals.  *See* Compl.  Even when the alleged misrepresentations involve some scientific analysis of the actual health and safety risk, it does not transform a misrepresentation case in an FDA regulatory matter.  *See Sciortino v. Pepsico, Inc*., 108 F. Supp. 3d 780, 814 (N.D. Cal. 2015); *City of Chicago v. Purdue Pharma L.P*., 211 F. Supp. 3d 1058, 1065 (N.D. Ill. 2016) ("the Court is not being asked to adjudicate whether opioids are appropriate for the treatment of chronic, non-cancer pain or whether defendants' drugs' labels are accurate, but whether defendants deliberately misrepresented the risks, benefits, and superiority of opioids when marketing them to treat chronic pain.").

Defendant also overstates the need to rely on the FDA's expertise.  The main trust of this case is whether Defendant's label is misleading, a claim that the Court is well qualified to resolve.  *Gubala v. CVS Pharmacy, Inc*., No. 14 C 9039, 2016 WL 1019794, at *16 (N.D. Ill. Mar. 15, 2016) ("The Court is well qualified to interpret the regulations and to resolve matters regarding allegations of false and misleading representation.") *citing Sciortino v. Pepsico, Inc*., 108 F. Supp. 3d 780, 813-14 (N.D. Cal. 2015) ("the issues raised by Plaintiffs' claims, particularly its state law misrepresentation claims, do not clearly require FDA's expertise or benefit from uniformity in administration") (citing cases); *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1349 (S.D. Fla. 2013) (plaintiff's claims regarding whether defendant's representations were false or misleading and whether consumers relied on them did not raise any issues on which the FDA has greater technical expertise than the courts) (internal quotation marks and citation omitted) (citing cases).

Finally, while Defendant states that the FDA is "actively engaging with these issues," there is no formal rule making currently pending.  MTD at 25.  Instead, Defendant only states that the FDA is considering a citizen petition.  *Id*.  Nothing suggest that the FDA is going to seize on the petition.  *See Reid*, 780 F.3d 952 (noting "there is no indication that the FDA is contemplating authorizing 'No Trans Fat' statements"); *Gubala*, 2016 WL 1019794, at *16 (denying a stay under the primary jurisdiction when defendant "does not point to any proposed amendments that would change the protein labeling requirements.").  Thus, "[a]bsent some plausible proposal for obtaining a determination from the FDA, a stay would do nothing more than hold [Plaintiff's] claim in

limbo." *Chavez v. Church & Dwight Co.,* No. 17 C 1948, 2018 WL 2238191, at *8 (N.D. Ill. May 16, 2018) *citing Biffar v. Pinnacle Foods Grp., LLC, No.* 16-0873-DRH, 2016 WL 7264973, at *2 (S.D. Ill. Dec. 15, 2016) (declining to stay action on primary jurisdiction grounds in suit alleging muffin mix label was deceptive because benefits of stay were speculative and stay would unduly prejudice plaintiff). Courts have repeatedly held that primary jurisdiction should not be invoked where awaiting related uncertain agency action would result in undue delays. *Chavez*, 2018 WL 2238191, at *8 (Noting that despite FDA seeking public comments on regulation, "there is no indication of when, if ever, the FDA will act. Even if the FDA does act in the near future, there also is no guarantee that it would squarely address the issues raised in this litigation."); *Burton v. Hodgson Mill, Inc*., No. 16-CV-1081-MJR-RJD, 2017 WL 1282882, at *8 (S.D. Ill. Apr. 6, 2017) (rejecting argument that court should grant stay to allow FDA time to formulate definition of term "all natural" because agency had not issued timeframe for decision and stay would unnecessarily protract litigation).

But even if the FDA does seize on the issue, it would not likely affect this case. There is a "presumption against retroactive legislation … deeply rooted in our jurisprudence." *Landgraf v. USI Film Prods*., 511 U.S. 244, 265 (1994). This same presumption also extends to regulations. Sweet v. Sheahan, 235 F.3d 80, 89 (2d Cir. 2000) ("Retroactivity is not favored in the law. Thus ... administrative rules will not be construed to have retroactive effect unless their language requires this result."). If the FDA did act, it would likely only apply to future claims. It would do little to resolve the claims at issue. *See In re Juul Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig*., 497 F. Supp. 3d 552, 581 (N.D. Cal. 2020) (rejecting stay under primary jurisdiction as unwarranted and noting "[t]he FDA will determine on a going forward basis whether, and if so how, JLI's product may be sold, with respect to nicotine delivery, labeling and warnings. It will not determine whether JLI's and the other defendants' past conduct [] --was illegal and caused plaintiffs' injury."). Accordingly, the Court should not stay Plaintiffs' claims in deference to FDA rulemaking, that may never come, and would not resolve this case.

## CONCLUSION

For the reasons set forth herein, Defendant's Motion should be denied in its entirety.


Dated: October 30, 2023                    Respectfully submitted,


                                           /s/ Trenton R. Kashima

                                           Trenton R. Kashima (SBN 291405)
                                           **MILBERG COLEMAN BRYSON
                                           PHILLIPS GROSSMAN PLLC**
                                           402 West Broadway St., Suite 1760
                                           San Diego, CA 92101
                                           Tel: (619) 810-7047
                                           tkashima@milberg.com

                                           Jason P. Sultzer, Esq.
                                           Philip J. Furia, Esq.
                                           Daniel Markowitz, Esq.
                                           **THE SULTZER LAW GROUP P.C.**
                                           85 Civic Center Plaza, Suite 200
                                           Poughkeepsie, NY 12601
                                           Tel: (845) 483-7100
                                           Fax: (888) 749-7747
                                           sultzerj@thesultzerlawgroup.com
                                           furiap@thesultzerlawgroup.com
                                           markowitzd@thesultzerlawgroup.com

                                           Nick Suciu III (admitted *pro hac vice*)
                                           **MILBERG COLEMAN BRYSON
                                           PHILLIPS GROSSMAN, PLLC**
                                           6905 Telegraph Road, Suite 115
                                           Bloomfield Hills, MI 48301
                                           Tel: (313) 303-3472
                                           nsuciu@milberg.com

                                           Gary Klinger*
                                           **MILBERG COLEMAN BRYSON
                                           PHILLIPS GROSSMAN, PLLC**
                                           221 West Monroe Street, Suite 2100
                                           Chicago, IL 60606
                                           Tel: (866) 252-0878
                                           gklinger@milberg.com

- 23 -

Erin Ruben*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
900 W. Morgan Street
Raleigh, NC 27603
T: 919-600-5000
eruben@milberg.com

J. Hunter Bryson*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
405 E 50th Street
New York, NY 10022
Tel: (630) 796-0903
hbryson@milberg.com

* *Pro Hac Vice* application forthcoming

*Attorneys for Plaintiffs and the Proposed Class*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS                    Case No.: 1:23-cv-01038

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 30, 2023 the foregoing document was filed via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.


*/s/ Trenton R. Kashima*
Trenton R. Kashima